# David R. McIntire et al., Plffs. in Err., v. William Blakeley.

It is wrongful conversion if collateral pledged for one debt is held for another; and the pledgor is not bound, in order to maintain an action for such conversion, to actually pay the principal debt if he makes a tender and is informed that this would not release his collateral.

In an action of trover and conversion, to recover the value of stock cer-

Cited in Brunner v. Griffith, 4 Pa. Dist. R. 640.

NOTE.—The tender of payment by the pledgor fixes the rights of the parties, when improperly refused.  Jennings v. Loeffler, 184 Pa. 318, 39 Atl. 214.  And the pledgor may recover for the conversion.  Prentiss v. Hannay, 4 Whart. 508.

tificates deposited with the president of a bank as collateral security for notes held by the bank, the court below properly charged the jury that a refusal by the cashier to return the certificates upon a tender of the principal debt when the certificates were in the vaults of the bank assigned by him in blank, was a conversion of the same; and also that if a subsequent refusal by the president to deliver the certificates was made with a view to secure some advantage to the bank foreign to the terms of the agreement under which they were assigned to him, that also would amount to a wrongful conversion.

(Argued November 8, 1887. Decided January 3, 1888.)

October Term, 1887, No. 234, W. D., before GORDON, Ch. J., PAXSON, STERRETT, and WILLIAMS, JJ. Error to Common Pleas No. 2 of Allegheny County to review a judgment for the plaintiff in an action of trover and conversion. Affirmed.

The facts as they appeared on the trial before MAGEE, J., are stated by him in his charge to the jury as follows:

This is an action of trover and conversion, brought by the plaintiff, to recover the value of two certificates for five shares each of the capital stock of the Metropolitan National Bank of Pittsburgh, of the value of $500 each. The declaration alleges that the plaintiff on the 4th day of December, 1885, at 9 o'clock A. M., was lawfully possessed of the same, and that they, the certificates of stock, came into possession of the said defendants by finding, and were wrongfully converted to their use.

It is in evidence that the plaintiff was the owner of the two certificates of stock in controversy, and that by a writing bearing date the first of July, 1882, these certificates were placed in the hands of D. R. McIntire, who was at the time the president of the Metropolitan National Bank of Pittsburgh, as collateral security for the payment of two certain notes made by the plaintiff, and held by the bank; one for the sum of $1,000, and the other for $500. The writing given by Mr. McIntire to Mr. Blakeley provided that the certificates of stock were to be reassigned to the plaintiff upon the payment of the two notes. It is admitted that the $1,000 note was paid. The $500 note fell due—I presume after renewal—on about November 23, 1885, and was protested for nonpayment. Mr. Blakeley desired to have the $500 note renewed, but the bank, the holder thereof, refused to do so. On the first or second day after the protest the plaintiff, Blakeley, through his clerk and the indorser, made a tender to the

book-keeper, and afterward to the cashier of the bank, of the amount due on the $500 note, and demanded a delivery of the note and a return of the certificates of stock given as collateral security for its payment.    These two tenders were made at the bank.    The cashier said he was willing to accept the money and give up the note, but that he did not know anything about the certificates of stock or the terms of the transfer.    I do not know that he said positively that he did not know of the existence of the securities.    The indorser, who made the tender, thereupon produced the writing made by Mr. McIntire, and upon which the certificates of stock had been transferred by Mr. Blakeley to Mr. McIntire.    The cashier still refused to give up certificates, saying, if I remember the evidence correctly, that he did not have them.

There is evidence, however, from the president and from the cashier, that the certificates of stock were in the vaults of the bank.    The president says that he assigned the certificates in bank, and left them in the bank to be delivered to the proper person.    If it be true that the note and the certificates were at the bank for the purpose of carrying out the trust upon which they were committed to the president, the tender thus made, and the refusal to deliver, would constitute a conversion of the property, and the bank and its officers and all participating in the wrong doing, would be chargeable with the conversion; if you believe from the evidence that there was a common intent to withhold the certificates unlawfully, and to deprive the person entitled to the possession of them of his dominion over them.

It is in evidence that on the 4th of December, 1885, a few days after the tender and demand made at the bank, Mr. Blakeley went to the office of the defendants' attorney and there made to the president of the bank a tender of the amount due on the $500 note, and demanded a return of his stock.    This demand was refused, Mr. McIntire, the trustee and president of the bank, saying that he had been advised by his counsel not to deliver the certificates.    At the time this tender and demand was made the certificates in controversy were in his counsel's office, where the transaction took place.

If you believe that the tender and demand was refused by the trustee and president of the bank, for the purpose of depriving the owner of his property, and with a view to secure some advantage foreign to the terms of the writing, and not within its

provisions, such refusal to deliver, in law would constitute a conversion of the property, with the immediate right of possession in the owner of the stock, Mr. Blakeley.

In the afternoon of the day on which this tender and demand was made this action was commenced.

The defendants say that they never have unlawfully refused to deliver up the certificates of stock, but that the plaintiff has failed to make a proper tender to the bank, in that the tender of the money was a conditional one, such as the bank was not required to comply with. If you find as a fact that the bank was not the holder of the certificates, or had no control over them, and could not deliver them, not from any fault of the bank, it would follow that the condition annexed to the tender would render the tender itself valueless, for the purpose of this suit, as far as the bank is concerned, and would not subject the bank to liability for the stock in this action. That is what the bank says; that it did not have the certificates, did not have control of them, and could not deliver them; that is its grounds of defense; and I say to you that if it could not—if plaintiff was asking it to do a thing it could not do because it did not have control of the certificates, that would not make it in fault. If it did have control and could have delivered the stock, and declined to do it, it has converted, in law, the stock certificates, and would be answerable along with others, who had the control and exercised that control or dominion, and interfered with the rights of the owner.

McIntire says, when you come to him, that he is not in fault in not delivering the stock, because the $500 note is not paid. If the plaintiff has not paid the note or made a tender of payment which would be a legal tender, it would follow that the terms of the writing had not been complied with, and McIntire would not be in fault. Dravo, as cashier, says that he has been in no default in the matter; that he was not the holder of either the note or the certificates, and that his refusal gave him no liability to this action. The only way to hold Dravo, and in fact all perhaps, at least not connected directly with the paper, would be the fact, if you so find, that he and McIntire and the bank were by their joint control and action depriving the plaintiff of his property.

The defendants submitted the following points:

1. That under the law and evidence the plaintiff is not entitled to recover.

*Ans.* Refused. [1]

2. If the jury believe that the legal title to the stock in question was in D. R. McIntire from July 1, 1882, until the present time, or the date of suit, the plaintiff is not entitled to recover in this form of action.

*Ans.* Refused. [2]

3. If the jury believe that the note of $500, secured in the hands of defendant, McIntire, was unpaid at date of tender and demand to him for delivery of the stock certificates, the plaintiff is not entitled to recover.

*Ans.* Refused. [3]

4. Unless the jury believe from the evidence that the title to the stock certificates and stock, and the right of possession were both united in plaintiff at time of suit or demand, the verdict must be for defendants.

*Ans.* Affirmed.

(The defendants claimed that the court erred in not, after affirming this point, instructing the jury that a legal title meant a complete title, and that unless the stock certificate and the stock itself, of which it was an evidence, was, at the time of suit, in the name of plaintiff, however much he might have had the right of possession as against his voluntary trustee, he had no title such as is required to maintain an action of trover.) [4]

5. A tender by the plaintiff to D. R. McIntire, one of the defendants, or to the bank, accompanied as it was by a condition for the delivery of the stock certificate, is not a tender, unless the jury believe that at the time there had been an actual sale of the stock in question by the defendants.

*Ans.* Refused. [5]

6. If the jury believes that at the time of the tender there had been no conversion of the certificate by the defendants, then in the absence of proof of payment of the $500, the plaintiff is not entitled to recover.

*Ans.* Refused. [6]

At the trial the defendants offered to produce evidence as follows:

Defendants' counsel proposes to prove by the witness on the

stand, the plaintiff in this case, that he is and was at the date of bringing this suit, indebted to the Metropolitan National Bank, a bank association created under the act of Congress, *viz.*, in the sum of $125.29, being the amount of a judgment obtained by the firm of Blakeley & Bigham, of which the plaintiff was a member, before Alderman Burke, of the city of Pittsburgh, which amount was not due from the bank to the plaintiff, but which suit was brought at the suggestion of plaintiff. He requested that the bank in this matter would pay the judgment, and, admitting it was wrongful after it had been paid by the bank, agreed and promised to pay the bank the full amount thereof, which amount is still unpaid— the offer being made for the purpose of showing that if it be found that the stock had passed into the control, and was owned by the bank, or that it held it under the terms of the trust paper made between McIntire and Blakeley, that they had a right to hold the same and to refuse a transfer of the same until the existing claims of the bank against General Blakeley were paid; this authority being given by § 186 of the Revised Statutes, and also by the by-laws of the bank, adopted under that provision, and also declared on the face of the certificate.

Objected to as incompetent and irrelevant. Offer overruled. Exception. [7]

Verdict and judgment were for the plaintiff for $1,062.23.

The assignments of error specified: (1–6) The action of the court on the points, as stated above; and (7) the rejection of the offer quoted.

*L. K. Porter* for plaintiffs in error.

*S. A. McClung* for defendant in error.—Any unauthorized or unwarranted interference with the property of another which, in any measure, restricts or interferes with the owner's dominion or control over it, is a conversion of the property which renders the person guilty of such interference liable for the value of the property at the time of conversion. 6 Wait, Act. & Def. p. 175, and cases cited.

Trover will not lie against one having a lien unless he has waived his lien or puts his refusal to deliver up the goods on some other grounds. Id. p. 144, and cases cited.

It is a wrongful conversion if collateral pledged for one debt is held for another. Id. 165, and cases cited.

Nor was the plaintiff below bound to actually pay the $500 when he was told (as he was) that this would not secure the release of his stock.

The defendants had done that which was a conversion, and plaintiff's right of action was complete. This does not involve any danger of sacrificing the pledgee's rights.

"Trover . . . is an equitable action, and if the party has a legal or equitable lien on the property it may be defalcated in the damages assessed by the jury." Stoughton v. Rappalo, 3 Serg. & R. 563. See also Lehr v. Taylor, 90 Pa. 381.

In Neiler v. Kelley, 69 Pa. 403, it was admitted that a tender would have made complete plaintiff's right of action; but the court held, further, that when there had been a wrongful conversion of a pledge a tender of the debt is not necessary, but it may be recouped by the jury from the damages.

OPINION BY MR. CHIEF JUSTICE GORDON:

An examination of the charge and rulings of the court below satisfies us that there is nothing erroneous in them.

The case was so well tried, and the law governing it so correctly and clearly stated, that nothing is left for us but to concur in the judgment.

The judgment is affirmed.